Stephanie Sheridan (CA 135910)
Meegan B. Brooks (CA 298570)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone:628.600.2250
Facsimile: 628.221.5828
ssheridan@beneschlaw.com
mbrooks@beneschlaw.com

Attorneys for Defendant
OverDrive, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Beth Cone, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>OverDrive, Inc.,<br><br>Defendant. | Case No. 2:25-cv-1617<br><br>Assigned for all purposes to the Honorable Fernando L. Aenlle-Rocha<br><br>**DEFENDANT OVERDRIVE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Complaint Filed: February 25, 2025<br>Hearing Date: September 26, 2025<br>Time: 1:30 p.m. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on September 26, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Fernando L. Aenlle-Rocha of the United States District Court for the Central District of California, in First Street Courthouse, 350 W. 1st Street, Courtroom 6B, Los Angeles, California 90012, Defendant OverDrive, Inc. will and hereby does move this Court pursuant to Rule 12(b)(1) and Rule 12(b)(6) for an Order dismissing the Complaint.

First, Plaintiff lacks Article III standing, because she has not alleged any cognizable injury-in-fact.

Second, Plaintiff has failed to state a claim upon which relief may be granted. With regard to both sections of CIPA, Plaintiff consented to the actions described in her Complaint when she created and continued to use her Google and Facebook accounts, and when she used the OverDrive website after receiving notice from Google, Meta, and OverDrive that information about her activity on the site could be collected.

Plaintiff's Section § 631 claim fails for the additional reasons that (i) Plaintiff does not allege use of a "telephone wire, line, cable, or instrument" or that any wiretap or other connection to the website was "unauthorized"; and (ii) nothing in the Complaint plausibly supports Plaintiff's claims that Meta or Google intercepted a communication "in transit."

Plaintiff's Section 632 claim fails for the additional reason that her interactions with OverDrive were not "confidential communications" within the meaning of CIPA.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, and exhibits thereto, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

Dated: June 11, 2025

Respectfully submitted,

*s/ Meegan B. Brooks*

STEPHANIE SHERIDAN (CA 135910)
MEEGAN B. BROOKS (CA 298570)
Benesch, Friedlander, Coplan & Aronoff LLP

Attorneys for Defendant
OverDrive, Inc.

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. Summary of the Complaint ..... 2

B. Plaintiff Consented to the Meta and Facebook Privacy Policies ..... 4

III. Plaintiff lacks Article III Standing ..... 10

IV. PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ..... 13

A. Plaintiff Cannot State a Claim Under CIPA Because She Consented to the Alleged Conduct ..... 13

B. Plaintiff Has Failed to State a Claim under CIPA § 631(a) ..... 15

1. Plaintiff Does Not Allege A Tapping or Other Unauthorized Connection to a Telegraph or Telephone Wire, Line, Cable, or Instrument" ..... 16

2. Plaintiff Does Not Allege Facts to Suggest Any Alleged Interception Occurred "In Transit" ..... 17

C. Plaintiff Has Failed to State a Claim under CIPA § 632 ..... 19

V. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. PSP Grp., LLC*,
691 F. Supp. 3d 1031 (E.D. Mo. 2023) ........................................................11

*Adler v. Community.com, Inc.*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ..................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................13

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-CV-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023)........11

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)...............................................................20

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)..........................................................12, 13

*In re Doubleclick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ............................................................14

*Dunbar v. Google, Inc.*,
No. 5:10-CV-194-DF, 2011 WL 12906350 (E.D. Tex. May 25, 2011)..............4

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016)............................................................6

*In re Facebook Internet Tracking Litig.*,
956 F.3d at 608 ...............................................................................................18

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)............................................................14

*Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*,
2021 WL 5707741 (N.D. Cal. Oct. 21, 2021) ....................................................6

*Farst v. AutoZone, Inc.*,
700 F. Supp. 3d 222 (M.D. Pa. 2023)..............................................................11

*Flanagan, v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 19

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......... 14

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 16

*In re Google Asst. Priv. Litig.*,
457 F. Supp. 3d at 825–26 .......... 17

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .......... 5

*Gray, et al. v. Amazon.com Inc, et al.*,
2024 WL 2206454 (9th Cir. May 16, 2024) .......... 14

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 12

*Ingrao v. AddShoppers, Inc.*,
No. CV 24-1022, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) .......... 12

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023), *motion to certify appeal denied*, No. 23CV02500EMCEMC, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) (also cited in the Complaint ) .......... 18

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 17

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 17

*Lightoller v. Jetblue Airways Corp.*,
No. 23-CV-00361-H-KSC, 2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 11

*Lindsay-Stern v. Garamszegi*,
2016 WL 11745948 (C.D. Cal. Oct. 13, 2016) .......... 18

*Marquis v. Google, Inc.*,
No. SUCV2011-02808-BLS1, 2014 WL 4180400 (Mass. Super. July 27, 2014) .......... 4

*Marsh v. Zaazoom Sols., LLC*,
2012 WL 952226 (N.D. Cal. Mar. 20, 2012) ....................................................21

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ......................................................16, 17

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .................................................17

*Matera v. Google Inc.*,
Case No. 15-cv-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ......................................................................................................5

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d at 799 ....................................................................................20

*Meta Platforms, Inc. v. Nguyen*,
No. 21-CV-05002-TSH, 2023 WL 8686924 (N.D. Cal. Nov. 21, 2023)............7

*MySpace, Inc. v. The Globe.com, Inc.*,
2007 WL 1686966 (C.D. Cal. Feb. 27, 2007) ....................................................5

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014)..............................................................18

*People v. Carella*,
191 Cal. App. 2d 115 (Ct. App. 1961)..............................................................17

*People v. Wilson*,
17 Cal. App. 3d 598 (Ct. App. 1971)................................................................17

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014)..............................................................14

*R.C. v. Sussex Publishers, LLC*,
No. 24-CV-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .............19

*Revitch v. New Moosejaw*,
LLC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) (also cited in the Complaint ) ...........................................................................................18, 20

*Reyes v. Educ. Credit Mgmt. Corp.*,
773 F. App'x 989 (9th Cir. 2019) ....................................................................14

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 20

*Rojas-Lozano v. Google, Inc.*,
No. CV 15-10160-MGM, 2015 WL 4779245 (D. Mass. Aug. 12, 2015) .......... 4

*Rudgayzer v. Google, Inc.*,
986 F.Supp.2d 151 (E.D.N.Y. 2013), *order withdrawn*, No. 13CV120ILGRER, 2014 WL 12676233 (E.D.N.Y. Feb. 10, 2014) .......... 5

*Shaw v. Hahn*,
56 F.3d 1128 (9th Cir. 1995) .......... 13

*Shwarz v. United States*,
234 F.3d 428 (9th Cir. 2000) .......... 13

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 14

*Smith v. Facebook, Inc.*,
745 F. App'x 8–9 (9th Cir. 2018) .......... 14

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 6, 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 10, 11, 13

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293,1298 (9th Cir. 1998) .......... 21

*Swarts v. Home Depot, Inc.*,
2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) .......... 20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 10, 11, 13

*In re Vizio Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d at 1228 .......... 18

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 14

**Statutes**

Cal. Penal Code § 631(a) ....................................................................12, 14, 15, 17

Cal. Penal Code § 632(a) ....................................................................2, 17

California Patron Use Records Act....................................................................2, 18

California Reader Privacy Act, Cal. Civ. Code § 1798.90 ....................................2, 18

**Court Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Beth Cone brings this lawsuit under the California Invasion of Privacy Act ("CIPA") seeking compensation for the use of ubiquitous internet-age tools by third parties Meta Platforms, Inc. (formerly known as Facebook, Inc.) and Google LLC on Defendant OverDrive, Inc.'s website. These tools, Meta Pixel and Google Analytics, are used across tens of millions of websites[1] to help website operators measure the performance of their internet advertising and provide insight into how their websites are performing. But rather than suing Meta and Google, Plaintiff brings this case against OverDrive simply for operating one of those many millions of websites, on the theory that OverDrive "aided and abetted" these behemoth corporations in alleged unlawful "wiretapping" and "eavesdropping" by allowing them to operate on its website.

Plaintiff's Complaint should be dismissed for several reasons. First, Plaintiff lacks Article III standing, because she has not alleged *any* cognizable injury-in-fact. Even if Meta and Google collected information about her activity on OverDrive's website in the way she describes, she does not allege any way in which this collection—which occurs billions of times each day across millions of websites—injured her.

Second, Plaintiff has failed to state a claim upon which relief may be granted. With regard to both sections of CIPA, Plaintiff's claim fails because she consented to the

[1] BusinessDasher, *15+ Google Analytics Statistics & Usage Numbers For 2024*, September 18, 2024, URL: https://www.businessdasher.com/google-analytics-statistics/ (visited Apr. 25, 2025); Google Analytics, Google Analytics 4 Stats 2025, https://ga4.com/ga4-stats (visited June 11, 2025); W3Techs, Usage statistics and market share of Meta Pixel for websites, https://w3techs.com/technologies/details/ta-facebookpixel (accessed June 11, 2025).

activities alleged in the Complaint when she signed and used her Facebook and Gmail accounts and used OverDrive, after receiving notice from all three entities that her activity on the site was subject to tracking. In addition, Plaintiff has failed to state a claim under Section 631 for the additional reasons that: (i) Plaintiff does not allege use of a "telephone wire, line, cable, or instrument," let alone an "unauthorized connection" to one; and (ii) nothing in the Complaint plausibly supports Plaintiff's claims that Meta or Google intercepted a communication in transit (*i.e.*, in the instant that Plaintiff landed on each page of OverDrive's website).

Plaintiff's Section 632 claim fails for the additional reason that her interactions with OverDrive were not "confidential communications" within the meaning of CIPA.

## II. FACTUAL BACKGROUND

### A. Summary of the Complaint

OverDrive is a Delaware corporation with its principal place of business in Cleveland, Ohio. Compl. ¶ 6. OverDrive owns and operates www.OverDrive.com, a website where users can browse and search for e-books and audiobooks. *Id*. ¶¶ 31-32. OverDrive is also the developer of the Libby app, a free application that lets library card holders checkout eBook and audiobooks from their local libraires, using their library cards.

Plaintiff Cone alleges that she is a California resident who visited OverDrive's website while in California. Compl. ¶¶ 3-4. Plaintiff claims that she used the website to search for and view samples of digital books. *Id*. ¶ 4. Plaintiff selected the "Browse our collection" option and searched OverDrive's catalog of digital books. *Id*. ¶¶ 35-36. Plaintiff alleges she used the website to search for and read a sample of an e-Book titled *The Most Fun We Ever Had*. *Id*. ¶ 39. Plaintiff alleges that her "communications" with the website were "intercepted" by third parties Meta and Google using their "tracking

services," Meta Pixel and Google Analytics. *Id*. ¶ 2. Plaintiff asserts that these actions by Meta and Google constitute violations of Sections 631 and 632 of CIPA, and that OverDrive aided and abetted these violations. *Id*. ¶¶ 109-137.[2] Plaintiff alleges that she had accounts with Meta and Google at the time she visited OverDrive's website, which enabled these third parties to use their analytical tools, incorporating certain cookies, to collect information about Plaintiff's use of the website. *Id*. ¶¶ 28, 86. Plaintiff alleges that she has had active accounts with Google and Facebook/Meta "for over ten years." *Id*. ¶ 4.

The Complaint alleges that Meta Pixel and Google Analytics are each designed to interact with users' browsers to send to Meta's or Google's servers a "duplicate [of] the user's Website communications." Compl. ¶ 48. Meta Pixel relies on Facebook cookies to match website visitors to Facebook user accounts. *Id*. ¶ 50. This tool is useful for assessing advertising efficacy. *Id*. ¶¶ 51-52. Google Analytics uses a JavaScript measurement code to "measure a website" and collect information about how users interact with the site. *Id*. ¶ 55. Google Analytics "can" associate data with a user's Google accounts if the user has signed in to that account and has turned on Ads personalization. *Id*. ¶ 59.

Plaintiff alleges that, through these tools, Meta and Google intercept information about the digital materials users of OverDrive search, select, and/or read. Compl. ¶¶ 61-68. This information allegedly can be linked to the users' Facebook or Google accounts.

[2] Plaintiff also mentions the California Patron Use Records Act, Cal. Gov't Code § 7927.105, and the California Reader Privacy Act, Cal. Civ. Code § 1798.90. *See* Compl. ¶¶18-26. But she does not allege a violation of either statute. Nor could she: both acts bar certain book services from disclosing certain information to any ***government*** entity, ***or from being compelled to disclose*** such information (*e.g.*, by a court or law enforcement agency) to any person. The Complaint does not allege that OverDrive disclosed information to the government or was compelled to disclose information to any person.

*Id.* ¶¶ 72, 86. Plaintiff claims that Meta's and Google's duplication of users' interaction with websites "occurs within milliseconds." *Id.* ¶¶ 48. The Complaint posits that Google and Meta "have the capability" to use information collected from websites "for their own purpose," but does not allege that this occurred with information collected from her use of OverDrive. *Id.* ¶ 94.

Plaintiff conclusorily alleges that neither Meta, nor Google, nor OverDrive obtained consent from California residents before Meta or Google engaged in these alleged practices. Compl. ¶ 99. But the Complaint tellingly omits any mention of the privacy policies and terms of services of those entities. Those policies are attached as Exhibits to this Memorandum and, as discussed below, the Court may take judicial notice of them.

### B. Plaintiff Consented to the Meta and Facebook Privacy Policies

Plaintiff alleges that she created a Facebook account and a Gmail account "over ten years" before visiting OverDrive's Website. Compl. ¶ 4. Although Plaintiff does not specify when she signed up for her accounts, Facebook and Google for many years have required users to expressly agree to their respective terms and conditions, including their privacy policies.

Thus, Courts across the country have repeatedly recognized that Gmail users necessarily agree to Google's Terms of Service and Privacy Policy. *See, e.g., Dunbar v. Google, Inc.*, No. 5:10-CV-194-DF, 2011 WL 12906350, at *3 (E.D. Tex. May 25, 2011) ("Upon creation of a Gmail account, a Gmail user agrees to the Google Terms of Service, Program Policy, and Privacy Policy[.]"); *Marquis v. Google, Inc.*, No. SUCV2011-02808-BLS1, 2014 WL 4180400, at *2 (Mass. Super. July 27, 2014) ("All Gmail users must agree to Google's terms of service and privacy policy before creating a Gmail account."); *Rojas-Lozano v. Google, Inc.*, No. CV 15-10160-MGM, 2015 WL 4779245, at *3 (D. Mass. Aug.

12, 2015) ("Here, Plaintiff signed up for a Gmail account and agreed to Google's Terms of Service and Privacy Policy. Specifically, Plaintiff was required to check a box next to the text, 'I agree to Google Terms of Service and Privacy Policy.' This 'clickwrap' agreement reasonably communicated the terms, and by clicking the box Plaintiff entered into a valid and enforceable contract."); *Rudgayzer v. Google, Inc.*, 986 F.Supp.2d 151, 156 (E.D.N.Y. 2013), *order withdrawn*, No. 13CV120ILGRER, 2014 WL 12676233 (E.D.N.Y. Feb. 10, 2014) ("Google requires all users, after seeing a screen listing the terms or a link to the terms, to agree to the terms of use before creating an email account.")[3]; *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *1 (N.D. Cal. Mar. 18, 2014) ("In the process of creating an account, users of Google's free Gmail service … must check a box indicating that they agree to be bound by Google's Terms of Service ('TOS') and Privacy Policy."). Moreover, when signing up for a Gmail account, Gmail users agree to be bound by any updates to the Terms of Service and Privacy Policy. Declaration of Meegan B. Brooks ("Brooks Decl."), Exhibit A; *see also Matera v. Google Inc.*, Case No. 15-cv-04062-LHK, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016); *MySpace, Inc. v. The Globe.com, Inc.*, 2007 WL 1686966, at *10 (C.D. Cal. Feb. 27, 2007) (parties were bound by future versions of the defendant's terms of service because the terms of service provided that modifications were effective upon posting); *accord Rudgayzer v. Google, Inc.*, 986 F. Supp. 2d 151, 154 n.1 (E.D.N.Y. 2013).

Google's current Privacy Policy, in effect since September 2024, notifies users like Plaintiff that Google could use Google Analytics to collect their information, including

[3] The *Rudgayzer* court later withdrew the dismissal order and transferred the action on Google's motion for reasons unrelated to the enforceability of the Terms of Service.

their browsing activity on third-party websites (like www.OverDrive.com): "When you visit sites or use apps that use Google Analytics, a Google Analytics customer may choose to enable Google to link information about your activity from that site or app with activity from other sites or apps that use our ad services." Brooks Decl., Ex. A. A hyperlink connected to the text "link information" shows additional text stating that:

> Google Analytics relies on first-party cookies, which means the cookies are set by the Google Analytics customer. Using our systems, data generated through Google Analytics can be linked by the Google Analytics customer and by Google to third-party cookies that are related to visits to other websites. For example, an advertiser may want to use its Google Analytics data to create more relevant ads, or to further analyze its traffic. Learn more

(*Id.*) A hyperlink connected to the text "Learn more" takes users to Google's support page for Google Analytics titled "Safeguarding your data" which explains, *inter alia*, that Google Analytics uses "cookies to report on visitor (aka[] user) interactions on Google Analytics customers' websites" and that "Users may disable cookies or delete any individual cookies." Brooks Decl., Exhibit B. The Privacy Policy also provides a hyperlink to a Google Product Privacy Guide, which allows users to opt out of Google Analytics' tracking of website activity via a browser add-on. Brooks Decl., Exhibit C.

As with Google, Courts have repeatedly acknowledged that Facebook users like Plaintiff consented to Meta's data tracking and collection practices described in its terms of service and privacy policy (including updates thereto) when they created their Facebook accounts. *See Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) ("The district court properly held that Plaintiffs consented to Facebook's data tracking and collection practices"); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1164-67 (N.D. Cal. 2016) (Meta's user-registration process created a binding contract on the user); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 2021 WL 5707741, at *5 (N.D. Cal. Oct. 21, 2021), *report and recommendation adopted*, 2021 WL 5707740 (N.D. Cal. Nov. 16, 2021) ("When they created Facebook and Instagram accounts, the defendants

agreed to terms of service and community standards."); *Meta Platforms, Inc. v. Nguyen*, No. 21-CV-05002-TSH, 2023 WL 8686924, at *7 (N.D. Cal. Nov. 21, 2023) ("When they created Facebook accounts, Defendants agreed to Facebook's TOS.").

Meta's Terms of Service, in effect since November 2024, "explains how we collect and use your personal data to determine some of the ads you see." Brooks Decl., Exhibit D. Meta's Privacy Policy explains to users that "[p]eople rely on our Products, like business accounts, professional tools and Facebook Pages, to run and promote their businesses. Businesses use our analytics services to understand more about how people are using their content, features, products and services." Brooks Decl., Exhibit E. Meta's Privacy Policy notifies users that:

> To provide these services, we use the information we collect about you. We put this information into aggregate reports so that partners can see how well their content, features, products and services are performing and are able to understand things like users' experience with such content, products and services. These reports aggregate information like:
> How many people interacted with our partners' content, products or services
> The general demographics and interests of the people who interacted with it
> How people use our partners' products and services to connect to Meta Products and the performance of their connection and networks
> Advertisers also receive other information. Read our Policy about how we share information with advertisers.

*Id*. The Privacy Policy also discloses that Meta collects and receives "information from partners, measurement vendors, marketing vendors and other third parties about a variety of your information and activities on and off our Products", including "[w]ebsites you visit and cookie data, like through … the Meta Pixel." *Id*.

Meta's Privacy Policy also directs users to Meta's Cookies Policy, which makes clear that it maintains "a summary of activity that businesses and [organizations] share with us about your interactions with them, such as visiting their apps or websites[.]" Brooks Decl., Exhibit F. The Cookies Policy explains that third party businesses (such as

OverDrive) "use [Meta's] Business Tools, such as Facebook Login or Meta Pixel, to share this information with us. This helps us do things such as give you a more [personalized] experience on Meta Products."[4] In fact, the Cookies Policy discloses that Meta uses the specific cookies that Plaintiff complains about (*i.e.* c_user; datr; fr; and _fbp cookies (Compl. ¶ 28)), what each cookie is used for, and their default lifespan. Brooks Decl., Ex. F.

Separately, since well before Plaintiff visited OverDrive.com sometime shortly before February 2025, OverDrive has maintained at the bottom of every page of its website a conspicuous notice stating "Privacy at OverDrive." Brooks Decl., Exhibit G. This notice contains a link that takes users to a webpage titled "Privacy at OverDrive" (available at https://www.OverDrive.com/policies), where users can click on a button titled "What information we collect." Brooks Decl., Exhibit H. Clicking on this button takes users to a subpage titled "OverDrive – Privacy Policy" (available at https://www.OverDrive.com/policies/privacy-policy). Brooks Decl., Exhibit I. The Privacy Policy, effective October 2024, notifies users that, among other things, "OverDrive may collect and store certain [personally identifiable information ('PII')] and non-PII related to your interactions and use of our Services, including but not limited to, IP address, device type, device ID, operating system, library card number, Adobe ID, library name, lending history, holds, reading progress, bookmarks, highlights, notes, and online activity." *Id.*

In a section specific to California residents, the Privacy Policy also states: "As you

[4] Meta's Cookies Policy also explains that its "business partners may also choose to share information with Meta from cookies set in their own websites' domains, whether or not you have a Facebook or Instagram account or are logged in." Brooks Decl., Ex. F.

interact with the Services, we may also collect information about you automatically though the use of cookies and similar technologies … include the following: Identifiers, such as IP Address, Adobe ID, Cookie ID, and device ID" and "Internet or other electronic network activity information, such as device type, operating system, browsing history on OverDrive-hosted webpages, and information related to your interaction with the Services, such as lending history, holds, and reading progress." Brooks Decl. Ex. I. OverDrive's Privacy Policy also discloses that OverDrive may "use third parties to process information you willingly submit to OverDrive," including but not limited to Google Analytics. *Id*.

The Privacy Policy gives users a number of options for restricting OverDrive's collection of their data. First, the Policy notifies users that if they "do not want OverDrive-hosted websites to collect information through the use of cookies," they "can set [their] web browser to block cookies" or "manage cookie preferences through the 'Cookie Settings' link located within the Service." *Id*. The Policy also states that California residents can email, call, or contact OverDrive's Data Request center to ask OverDrive to either delete or modify any personally identifiable information and can do so "without fear of being denies the Services." *Id*.

Additionally, OverDrive has maintained on its website a Cookies Policy, also available via https://www.OverDrive.com/policies. Users are alerted to the Cookies Policy via a prominent notice at the bottom of the "OverDrive – Privacy Policy" subpage. Brooks Decl., Ex. H. The Cookies Policy notifies users that "[s]ome Services may use third party cookies," including "Google Analytics (https://analytics.google.com) for research and analytics." Brooks Decl., Exhibit J. The Cookies Policy also discloses that OverDrive services "may also use Google Ads … or similar for remarketing." *Id*. It also notifies users of examples of uses for cookies, including "[t]racking what OverDrive-hosted webpages

you visit." *Id*. The Cookies Policy also instructs users who do not want OverDrive-hosted websites to collect information through cookies to set their "browser to block cookies." *Id*. Users can also "opt out of Google Analytics for Display Advertising and/or opt out of Google Ads by using Google Ads Settings" and manage "cookie preferences through the 'Cookie Settings' link located within [OverDrive's] Service." *Id*.

## III. PLAINTIFF LACKS ARTICLE III STANDING

To establish Article III standing to bring suit in federal court, Plaintiff must demonstrate that she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal citations omitted). The Supreme Court has emphatically "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021) (quoting *Spokeo*, 578 U. S. at 341). In *TransUnion*, the Court further held that "under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been ***concretely harmed*** by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (emphasis in original); *accord Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

Plaintiff claims that she was injured by Meta's and Google's alleged interception of her browsing history on OverDrive's website. Specifically, Plaintiff alleges that Google and Meta collected information that reflected that she sought out a single book on OverDrive's website. Compl. ¶ 39.

Plaintiff does not allege that the collection of information about her use of

OverDrive.com injured her in any way whatsoever. She does not claim, for instance, that her personal information was stolen and misused for identity theft or financial fraud. She does not claim that she suffered physical or emotional injury. Instead, she appears to claim that the alleged violation of CIPA was itself the injury. Compl. ¶¶120, 137. But as the Supreme Court made emphatically clear in *TransUnion* and *Spokeo*, a statutory violation on its own is not a cognizable injury for Article III purposes. A plaintiff seeking relief in federal court must allege an actual, concrete injury. Plaintiff here has utterly failed to do that.

District courts in California and across the country have repeatedly held that the collection of information about browsing history or shopping preferences, like what is alleged here, does not establish an injury in fact. *See, e.g., Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) ("Although Plaintiff alleges that Defendant monitored and recorded her communications via software when she visited Defendant's website, Plaintiff does not allege that she disclosed any personal information when she visited the website."); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) ("Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy."); *Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 231 (M.D. Pa. 2023) (allegations that a defendant "observed and recorded [plaintiff's] general actions on its website, revealing his shopping preferences regarding the company's products" failed to establish an injury); *Adams v. PSP Grp., LLC*, 691 F. Supp. 3d 1031, 1041 (E.D. Mo. 2023) (holding that alleged interception of a website user "clicking buttons and links" without "allegations that

Plaintiff typed any information about herself, such as her name, address, phone number, or email address into data fields on Defendant's website" did not establish standing).

As one court observed, "internet browsing activity [does not] qualify as private or personal information." *Ingrao v. AddShoppers, Inc.*, No. CV 24-1022, 2024 WL 4892514, at *8 (E.D. Pa. Nov. 25, 2024). Even alleged interception of personal contact information such as email addresses is not enough to show an actual injury. *See id.*; *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) ("the Court does not view the collection of email addresses, phone numbers, Zynga usernames, Zynga passwords, and Facebook usernames so private that their revelation would be highly offensive to a reasonable person.").

Moreover, even if Meta or Google could link Plaintiff's browsing to her, that would still not be enough to establish an actual, concrete injury. For example, in *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 66 (W.D. Pa. 2023), the plaintiff alleged that GameStop intercepted data showing her "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time[.]" The court held that interception of such information did not establish an injury even if her "browsing activity could have somehow been connected to her." *Id*. The court reasoned that:

> Product preference information is not personal information. This information is no different from what GameStop employees would have been able to observe if Ms. Cook had gone into a brick-and-mortar store and began browsing the inventory. Her physical movements in the store are like her mouse movements, her pauses to look at inventory are like her mouse pointer hovering over products, and her picking up video games off the shelf are like placing those same titles in her virtual cart. Ms. Cook certainly doesn't have a reasonable expectation of privacy in this kind of public shopping behavior in the physical world, and she doesn't have it in the digital world, either.

*Id*. To find standing based on the Complaint's mere allegation of statutory violations would fly in the face of *TransUnion*, *Spokeo*, and the legion of cases rejecting claims that lack any allegations of an actual, concrete injury.

## IV. PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Establishing the plausibility of a complaint's allegations is a two-step process. *See id.*, 556 U.S. at 679. First, a court should "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Then, a court should "assume the[] veracity" of "well pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 678 (internal citations omitted). The Court need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

### A. Plaintiff Cannot State a Claim Under CIPA Because She Consented to the Alleged Conduct

Plaintiff fails to state a claim under either Section 631(a) or 632 of CIPA because she consented to the activities alleged in her complaint. The lack of consent is a necessary

element to prove a violation of each section. *See, e.g., Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019) ("the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record.") (citation omitted). Plaintiff here consented to the alleged eavesdropping because she was aware from Meta's, Google's and OverDrive's terms and policies that tools like Google Analytics and Meta Pixel could be used to collect information about her use of the site when she used OverDrive's website.

Furthermore, "the Court must dismiss the claims regardless of whether consent is an element or a defense" where "judicially noticeable materials definitively establish that the plaintiffs consented to the conduct." *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 790 n.9 (N.D. Cal. 2019) (*citing Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013)). Applying these principles, courts across the country routinely dismiss wiretapping and other privacy claims when confronted with evidence that the plaintiff agreed to a privacy policy disclosing the challenged practice. *See, e.g., Smith v. Facebook, Inc.*, 745 F. App'x 8–9 (9th Cir. 2018); *In re Doubleclick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 503, 514, 526–27 (S.D.N.Y. 2001).[5] In fact, in an unpublished memorandum, the Ninth Circuit recently affirmed a district court's dismissal with prejudice of a case regarding Amazon's voice data collection practices, finding that there was no error in the district court's "conclusion that the Privacy Notice made sufficiently clear that voice data would be used for targeted advertising purposes." *Gray, et al. v. Amazon.com Inc, et al.*, 2024 WL 2206454, at *1 (9th Cir. May 16, 2024).

---

[5] *See also Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1030 (N.D. Cal. 2014); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1092 (N.D. Cal. 2018); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1213 (N.D. Cal. 2014).

*Smith v. Facebook, Inc.*, is also instructive. 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd* 745 F. App'x 8 (9th Cir. 2018). That case involved CIPA claims arising from Facebook's alleged collection of the plaintiffs' web browsing activity. The trial court dismissed the case after finding that the plaintiffs consented to the practices at issue, because they agreed to Facebook's privacy and cookie policies when they signed up, and that "disclose[d] the precise conduct at issue." *Id.* at 953–55. The Ninth Circuit affirmed on the same basis. *Smith*, 745 F. App'x at 8.

As discussed above, Plaintiff had both a Gmail account and a Facebook account and was required to accept Google's and Meta's respective terms of use, which describe in detail Meta Pixel's and Google Analytics' capability to collect data about her interactions with websites such as OverDrive's. Plaintiff was also notified of OverDrive's Privacy Policy and the collection of information about her interactions with OverDrive.com. OverDrive's Cookies Policy even specifically disclosed that it "may use third party cookies," including "Google Analytics (https://analytics.google.com) for research and analytics." Brooks Decl., Ex. J. Plaintiff was also advised of specific steps she could take to disable these tools and restrict the data Meta and Google collected from her. Plaintiff fails to allege that she followed any of these steps. She therefore consented to Meta Pixel's and Google Analytics' collection of her data on OverDrive.com and thus fails to state a claim under CIPA.

**B. Plaintiff Has Failed to State a Claim under CIPA § 631(a)**

Plaintiff fails to state a claim under Section 631(a) for at least two additional reasons. As relevant here, Section 631(a) contains four clauses:

**Clause 1:** where a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection ...

with any telegraph or telephone wire, line, cable, or instrument";

**Clause 2:** where a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit";

**Clause 3:** where a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; and

**Clause 4:** where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."

The Complaint alleges that OverDrive is liable under Clause 4, for aiding and abetting Meta's and Google's alleged "interception" of Plaintiff's interaction with OverDrive.com. *See* Compl. ¶¶ 117, 132. However, the Complaint fails plausibly to allege a violation of any of the first three clauses, so its allegation that OverDrive aided and abetted a violation must fail. *See Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020). Plaintiff's aiding-and-abetting theory also fails for the reasons discussed below.

### 1. Plaintiff Does Not Allege a Tapping or Other Unauthorized Connection to a Telegraph or Telephone Wire, Line, Cable, or Instrument"

Plaintiff has not stated a claim under CIPA § 631's first clause because she does not allege that anyone tapped or made a connection to a "telegraph or telephone line, wire, cable, or instrument." Cal. Penal Code § 631(a). Plaintiff tries to get around this problem

by asserting that Section 631(a) "is not limited to phone lines but also applies to 'new technologies' such as computers, the Internet, and email." Compl. ¶ 112. But courts have adopted this broad interpretation only as to the second clause of Section 631 (regarding the reading or learning of the contents of a communication), *not* the first clause. *See Mastel*, 549 F. Supp. 3d at 1134-35; *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022); *In re Google Asst. Priv. Litig.*, 457 F. Supp. 3d at 825–26; *Matera v. Google Inc.*, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016). Moreover, even if the first clause were applicable to a website, any connection to OverDrive's website by Meta and Google was ***authorized*** by OverDrive, the owner of the site and the only entity capable of giving such authorization.

### 2. Plaintiff Does Not Allege Facts to Suggest Any Alleged Interception Occurred "In Transit"

Plaintiff cannot state a claim under § 631(a)'s second clause because Plaintiff does not plausibly allege that her communications were intercepted "in transit or passing over a wire, line, or cable." Cal. Penal Code § 631(a).

The Ninth Circuit construes "interception" narrowly: the communication "must be acquired during transmission," not after the communication has already been received by the recipient and "is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added). Similarly, California courts have consistently held that a communication cannot be intercepted once it reaches its destination. *See, e.g., Rogers*, 52 Cal. App. 3d at 898; *People v. Wilson*, 17 Cal. App. 3d 598, 600 (Ct. App. 1971); *People v. Carella*, 191 Cal. App. 2d 115, 137–38 (Ct. App. 1961).

Even in the context of online communications, a plaintiff must still plausibly allege that the information was actually intercepted in transit, as opposed to being obtained by or

shared with a third party after reaching its destination. *See, e.g., Adler v. Community.com, Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (dismissing CIPA claim where "there [was] no plausible allegation that Defendant acted to learn the contents of the messages while they were, in a technical sense, in transit or in the process of being received"); *In re Vizio Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d at 1228; *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 953 (N.D. Cal. 2014). "[O]nce an [online communication] has been received by the destination server, a communication becomes 'stored' and contemporaneous interception is no longer possible." *Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *4 (C.D. Cal. Oct. 13, 2016) (internal citations omitted).

Here, Plaintiff alleges that Meta's and Google's respective software "cause the browser to […] duplicate the user's Website communications, transmitting these communications to the Third Parties' servers […]. In other words, when a user communicates with Defendant's Website, those communications are simultaneously and contemporaneously duplicated and sent to the Third Parties at the same time as they are being sent to Defendant." Compl. ¶ 48. Thus, even Plaintiff admits that any "communication" is directly between the user's browser and the Meta/Google's servers, not with OverDrive.[6] A duplication is not an interception; it necessarily occurs only after

[6] *In re Facebook Internet Tracking Litig.*, 956 F.3d at 608 (cited in the Complaint at ¶ 51) does not discuss the "in transit" issue. *Revitch v. New Moosejaw*, LLC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (also cited in the Complaint at ¶ 51), undermines Plaintiff's argument: "Even if the browser caused a parallel signal to be sent to NaviStone, that intervention happened while the signal was already in transit from Revitch's device." Nor does *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 962 (N.D. Cal. 2023), *motion to certify appeal denied*, No. 23CV02500EMCEMC, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) (also cited in the Complaint at ¶ 51), involve similar tools as those alleged here, as

the communication has arrived at its destination—*i.e.*, when it is no longer "in transit" or "passing over a wire, line, or cable." Additionally, Plaintiff alleges that after the data is duplicated, it is "then analyzed by the Third Parties before being provided to any entity that was a party to the conversations (like Defendant)." *Id.* ¶ 93. Plaintiff's allegations do not support a plausible inference that Meta or Google read the information "while the same is in transit," as required under § 631(a). *See R.C. v. Sussex Publishers, LLC*, No. 24-CV-02609-JSC, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025).

### C. Plaintiff Has Failed to State a Claim under CIPA § 632

To state a claim under CIPA Section 632, Plaintiff must allege that a person "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device." Cal. Penal Code § 632(a). Plaintiff has failed to state a claim under Section 632 because nothing in the Complaint plausibly suggests that her interactions with OverDrive.com were "confidential communications" within the meaning of Section 632.

A communication is confidential under § 632 only if one of the parties to that communication "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan, v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002). OverDrive's privacy policy makes very clear that information about Plaintiff's use of the site would be collected and could be shared with third parties. Meta's and Google's

---

that case concerned third-party software that, once it send code to the user, "intercept[ed] communications ***when the user ma[de] communications to the website***." (emphasis in original).

policies also disclose plainly that account holder's activities on websites such as OverDrive's could be tracked by those companies. In light of those disclosures, no reasonable person could expect that her browsing on OverDrive.com would nevertheless be private.

Even beyond those disclosures, "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (collecting cases). Consequently, courts "have developed a presumption" that such communications do not give rise to the required expectation. *Swarts v. Home Depot, Inc.*, 2023 WL 5615453, at *8 (N.D. Cal. Aug. 30, 2023). Nothing in the Complaint remotely serves to overcome the presumption that information collected online is not confidential.[7] *See Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (plaintiffs "must plead unique, definite circumstances rebutting California's presumption against online confidentiality"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799 (plaintiffs must "show[ ] that there is something unique about these particular internet communications which justify departing from the presumption"); *see, e.g., Revitch*, 2019 WL 5485330 at *3.

Plaintiff suggests that she had a reasonable expectation of privacy based on the

[7] Courts in this Circuit recognize that the technological reality of the Internet is that even seemingly sensitive information is routinely directed to third parties for a variety of purposes, from the display of content from third-party servers to web analytics. *Campbell*, for example, involved Facebook's scanning of actual messages between users, 77 F. Supp. 3d at 838.

California Reader Privacy Act and California Patron Use Records Act. Compl. ¶ 135. But these acts are far more limited than Plaintiff suggests. Both acts merely bar certain book services from disclosing certain information to any ***government entity***, or from being ***compelled*** to disclose such information (e.g., by a court or law enforcement agency) to any person. They do not create a general right to privacy in information about use of book services or libraries.

## V. CONCLUSION

Based on the foregoing, this Court should grant this motion and dismiss the case against OverDrive in its entirety. Because Plaintiff would be "unable to cure the defect by amendment," leave to amend is not warranted here, and Plaintiff's claims should be dismissed with prejudice. *See Marsh v. Zaazoom Sols., LLC*, 2012 WL 952226, at *11 (N.D. Cal. Mar. 20, 2012); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293,1298 (9th Cir. 1998).

Dated: June 11, 2025

Respectfully submitted,

*s/ Meegan B. Brooks*
STEPHANIE SHERIDAN (CA 135910)
MEEGAN B. BROOKS (CA 298570)
Benesch, Friedlander, Coplan & Aronoff LLP

Attorneys for Defendant
OverDrive, Inc.