Stephanie Sheridan (CA 135910)
Meegan B. Brooks (CA 298570)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
ssheridan@beneschlaw.com
mbrooks@beneschlaw.com

Michael A. Vatis (admitted pro hac vice)
Benesch, Friedlander, Coplan & Aronoff LLP
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Telephone: 646.328.0494
Email: mvatis@beneschlaw.com

Attorneys for Defendant
OverDrive, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Beth Cone, individually and on behalf of all others similarly situated

Plaintiff,

v.

OverDrive, Inc.,

Defendant.

Case No. 2:25-cv-1617

Assigned for all purposes to the Honorable Fernando L. Aenlle-Rocha

**DEFENDANT OVERDRIVE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Date: August 22, 2025
Time: 1:30 p.m.
Location: First Street Courthouse, 350 W. 1st Street, Courtroom 6B, 6th Floor, Los Angeles, California 90012

Complaint Filed: February 25, 2025

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiff Lacks Article III Standing ..... 1

B. Plaintiff has Failed to State a Claim Upon Which Relief May be Granted ..... 5

1. Plaintiff Cannot State a Claim Under CIPA Because She Consented to the Alleged Conduct ..... 5

2. Plaintiff Has Failed to State a Claim under CIPA § 631(a) ..... 11

3. Plaintiff Has Failed to State a Claim under CIPA § 632 ..... 12

III. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................13

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ....................13

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ....................3, 5

*Cook v. GameStop, Inc.*,
No. 23-2574, 2025 WL 2250261 (3d Cir. Aug. 7, 2025) ....................4, 5, 13

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ....................7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................2, 3

*Gladstone v. Amazon Web Services, Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) ....................7

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) ....................10, 11

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ....................5, 12

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ....................7, 8

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) ....................3

*Khamooshi v. Politico LLC*,
No. 24-CV-07836-SK, 2025 WL 1408896 (N.D. Cal. May 13, 2025) ....................1, 2

*Kong v. Mana Inv. Co., LLC*,
818 F. App'x 660 (9th Cir. 2020) ....................6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................1

*Marquis v. Google, Inc.*,
No. SUCV2011-02808-BLS1, 2014 WL 4180400 (Mass. Super. July 27, 2014) ....................7

*R.C. v. Sussex Publishers, LLC*,
No. 24-CV-02609-JSC, 2025 WL 1735994 (N.D. Cal. June 23, 2025) .....6

*Rudgayzer v. Google, Inc.*,
986 F.Supp.2d 151 (E.D.N.Y. 2013), *order withdrawn*, No. 13CV120ILGRER, 2014 WL 12676233 (E.D.N.Y. Feb. 10, 2014).....7

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018).....8, 9

*Turner v. Nuance Communications, Inc.*,
735 F. Supp. 1169 (N.D.Cal. 2024) .....7

**Statutes**

Cal. Civ. Code 1798.100 *et seq*.....9

Cal Civ. Code 1798.130(a)(5).....10

Cal. Civ. Code 1798.140(ae).....8

Cal. Code Regs. 7011(d) .....10

California Consumer Privacy Act .....8, 9

California Invasion of Privacy Act ..... *passim*

California Patron Use Records Act.....8

California Privacy Rights Act.....10

California Reader Privacy Act .....8

**Other Authorities**

Fed. R. Evid. 201 .....6

# I. INTRODUCTION

Plaintiff's Opposition describes at length what Meta and Google were "enabled" to do with data they collected about their subscribers. But Plaintiff glosses over what minimal data Meta and Google allegedly intercepted from Plaintiff's singular interaction with OverDrive's Website. Plaintiff alleges that she visited OverDrive's website one time, browsed its book collection, and searched for and accessed a sample of a single book. That's it. Plaintiff never provided her name, address, phone number, email or any other private or personally identifiable information via OverDrive's Website. According to the Complaint, such personally identifiable information was already in the hands of Meta and Google, collected when Plaintiff subscribed to their services. What Plaintiff seeks is to blame OverDrive for what she herself enabled Meta and Google to do by creating and using accounts with these companies. But under CIPA, OverDrive may be liable only to the extent that it aided and abetted Meta or Google in violating CIPA. And any such violation must be based on what Meta and Google collected from OverDrive's Website, not on what it collected from Plaintiff herself or from other websites. As discussed herein, Plaintiff has not alleged a cognizable injury sufficient to sustain standing based on alleged collection of information regarding her use of OverDrive. Nor do her allegations about that collection state a claim under CIPA.

# II. ARGUMENT

## A. Plaintiff Lacks Article III Standing

Plaintiff bears the burden of establishing that she has standing under Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "[A]llegations of a violation of CIPA …, even if true, do not [automatically] amount to a cognizable privacy injury under Article III." *Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 1408896, at *5 (N.D.

Cal. May 13, 2025). Rather, Plaintiff must allege the violation of a "legally protectable privacy interest based on the nature of the information at issue." *Id.* (citations omitted). Plaintiff has failed to carry that burden because she has not alleged a cognizable injury in fact. (Mot. at 10-13).

Plaintiff's cited authority is inapposite. First, Plaintiff relies on *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) to argue that "the interception of web browsing information" is sufficient to establish standing under Article III. However, in *In re Facebook,* the Ninth Circuit made clear that a violation of a statute could, on its own, establish a concrete harm, only where "(1) Congress enacted the statute at issue to protect a concrete interest that is akin to a historical, common law interest, and (2) the alleged procedural violation caused real harm or a material risk of harm to these interests." *Id.* at 598. Plaintiff's allegations fail the second prong. The alleged interception of Plaintiff's book searches and viewing of a single excerpt on a publicly accessible website, while she was logged into her Meta and Google accounts, is insufficient to allege a concrete injury to a historically protected privacy interests.

By contrast, *In re Facebook* involved Facebook's tracking practices across users' entire browsing histories on numerous websites, *after* users had logged off their Facebook accounts and so reasonably believed, based on Facebook's policies, that their web browsing would *not* be tracked. This allowed Facebook to collect "sensitive" and "personal data" about users. And "by correlating browsing history with users' personal Facebook profiles—profiles that could include a user's employment history and political and religious affiliations—Facebook gained a cradle-to-grave profile without users' consent." *Id.* at 598-99. The Ninth Circuit found that the allegations were sufficient to establish standing because "Facebook's tracking practices allow it to amass a great degree

of personalized information. Facebook's user profiles would allegedly reveal an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives." *Id*. at 599.

There is nothing remotely close to such allegations in the Complaint in this case, which alleges collection of information concerning a single visit to OverDrive's website and the viewing of a single book excerpt. Nor does Plaintiff allege that Meta or Google sold any of her information to advertisers. *Cf.* 956 F.3d at 600. Plaintiff has therefore failed to establish that the alleged interception invaded a privacy interested historically protected by common law, as required by *Spokeo* and *TransUnion*.

Plaintiff's reliance on *Jones v. Ford Motor Co.*, 85 F.4th 570, 575 (9th Cir. 2023) is similarly misplaced. In that case, the Ninth Circuit found that the plaintiff had adequately alleged a concrete injury where Ford, without the plaintiff's knowledge or consent, had collected private messages the plaintiff had exchanged on his cellphone before he had even connected his phone to his car's "infotainment" system. *Id.* at 572-573. Those messages as well as call logs were uploaded to the car's system as soon as the phone was connected. Moreover, text messages and call logs were "permanently retained" by Ford even after they were deleted from the user's cellphone. *Id.* at 574. Again, nothing remotely analogous is alleged here.

In contrast to the completely inapposite decisions cited by Plaintiff, courts have found that the collection of web browsing information analogous to what is alleged here was insufficient to establish standing. The Third Circuit recently affirmed the district court's decision in *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 66 (W.D. Pa. 2023), which held that interception of data by Microsoft from an e-commerce site showing a user's

"mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time" doesn't amount to concrete harm. (*See* Mot. at 12-13). In affirming, the Third Circuit, following *TransUnion* and its progeny, considered whether the alleged violation has a "close relationship" with a "harm traditionally recognized as providing a basis for a lawsuit in American courts." *Cook v. GameStop, Inc.*, No. 23-2574, 2025 WL 2250261, at *3 (3d Cir. Aug. 7, 2025) (quoting *Barclift v. Keystone Credit Servs.*, LLC, 93 F.4th 136, 141 (3d Cir. 2024)).

In assessing whether a statutory violation was closely related to the common law harm of disclosure of private information, the Third Circuit noted that such a harm is premised on "humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny." *Id.* But the court held that the disclosure of information about what a person viewed or searched for on a website could not plausibly result in embarrassment or humiliation. *Id.* at *10. Moreover, even if the information collected from the plaintiff's use of GameStop could plausibly cause humiliation if disclosed publicly, the information was disclosed only "to Microsoft, a third-party vendor to GameStop, not the broader public. [The plaintiff's] alleged harm is therefore not analogous to the harm associated with the tort of disclosure of private information," and so was insufficient to establish standing. *Id.* at *11.[1]

[1] The Third Circuit also made clear that it is not enough for a plaintiff to show that she suffered the type of harm that a statute is designed to protect against. Rather, a court must consider the specific harm alleged by plaintiff and examine whether the common law would have protected against that harm. 2025 WL 2250261, at *13-14. In other words, it is insufficient for a plaintiff to allege that the defendant's actions violate a statute; she must

This case is on all fours with *GameStop*. Plaintiff does not allege that the information collected from her use of OverDrive was of the type that would cause humiliation or embarrassment if disclosed publicly. And she alleges only that it was disclosed to Meta and Google, not the public. That is insufficient to establish a concrete harm sufficient to give rise to Article III standing.

## B. Plaintiff has Failed to State a Claim Upon Which Relief May be Granted

### 1. *Plaintiff Cannot State a Claim Under CIPA Because She Consented to the Alleged Conduct*

Plaintiff fails to state a claim under either Section 631(a) or 632 of CIPA because she consented to the activities alleged in her complaint. (Mot. at 4-10, 13-15). Not only did Plaintiff have notice of, and consent to, OverDrive's policies disclosing the use of tools such as Meta Pixel and Google Analytics on its Website, but she also had notice of, and consented to, the use of these tools by agreeing to Facebook's and Google's terms of use.

In *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 862 (C.D. Cal. 2024), this Court rejected the defendants' similar consent argument because they did "not attach or seek judicial notice of Facebook's policies, and, thus, fail[ed] to show Plaintiffs unequivocally consented to Defendants' alleged feeding of their Search Terms to Facebook." *Id*. In contrast, OverDive has sought judicial notice of, and attached to its motion, the OverDrive, Meta, and Google policies that were in effect at the time Plaintiff visited OverDrive's Website. (Mot. 4-8). Additionally, OverDrive went a step further and cited for the Court nearly a dozen district court opinions finding that users were required

---

allege that she suffered a concrete harm historically protected against by common law. *Id.* at *14.

to accept Facebook's and Google's terms of use by creating and using their accounts (as Plaintiff alleges she did here). (Mot. at 4-6). This is sufficient to establish that Plaintiff consent to the actions alleged in the Complaint.

Plaintiff's reliance on *R.C. v. Sussex Publishers* in response is misplaced. In that case the court rejected a defendant's attempt to rely on "the summary judgment record [and] complaint allegations" in two cases that the plaintiff was not a party to. *See R.C. v. Sussex Publishers, LLC*, No. 24-CV-02609-JSC, 2025 WL 1735994, at *3 (N.D. Cal. June 23, 2025). OverDrive does no such thing. Instead, OverDrive has attached and asked the Court to take judicial notice of the OverDrive, Meta, and Google policies in effect when Plaintiff visited OverDrive's website. If the Court takes judicial notice of these policies, they will be part of the record in *this* case. And those policies establish that Plaintiff had notice of and consented to the actions alleged in the Complaint. OverDrive cites the decisions of other district courts merely to show that numerous courts across the country have found that users in the same position as Plaintiff consented to Google's and Meta's terms of use.[2]

Whether Facebook and Google users in the same situation as Plaintiff agreed to their terms of use is directly relevant to the matter at issue. Further, Plaintiff raises no dispute whatsoever with the holdings in those cases. Plaintiff does not attempt to distinguish her case from any of the cases finding that Facebook and Google users consented to the respective companies' terms by creating and using their accounts. Nor could she. Those

---

[2] Under Federal Rule of Evidence 201, this Court is allowed to take judicial notice of the cases cited by OverDrive (Mot at 4-6) because they are "not subject to reasonable dispute and the proceedings to which they relate have a direct relation to matters at issue." *Kong v. Mana Inv. Co., LLC*, 818 F. App'x 660, 661 (9th Cir. 2020) (cleaned up).

cases' findings are clear that they're based on experiences shared by all Google and Facebook users. For example, in *Rudgayzer v. Google, Inc.*, 986 F.Supp.2d 151 (E.D.N.Y. 2013), *order withdrawn*, No. 13CV120ILGRER, 2014 WL 12676233 (E.D.N.Y. Feb. 10, 2014), the district court found that "Google requires ***all users***, after seeing a screen listing the terms or a link to the terms, to agree to the terms of use before creating an email account." *Id.* at 156 (emphasis added). Similarly, the Court in *Marquis v. Google, Inc.*, No. SUCV2011-02808-BLS1, 2014 WL 4180400 (Mass. Super. July 27, 2014) found that "***[a]ll Gmail users*** must agree to Google's terms of service and privacy policy before creating a Gmail account." *Id.* at *2 (emphasis added). Similarly, in *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016), the district court found that three separate plaintiffs, who signed up using different types of devices (computer vs. mobile device) over a span of several years all "agreed to the current user agreement." *Id.* at 1167. Plaintiff offers no reason why her creating her accounts with Google and Facebook should warrant a different result.[3]

Plaintiff's argument that the policies are insufficient to show consent because OverDrive "has not submitted the design and content of Google's and Meta's account creation screens at the time Plaintiff created an account" (Opp. at 13) is unfounded. In *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023), the court declined to find that

[3] Plaintiff's reliance on *Turner v. Nuance Communications, Inc.*, 735 F. Supp. 1169 (N.D.Cal. 2024), and *Gladstone v. Amazon Web Services, Inc.*, 739 F. Supp. 3d 846 (W.D. Wash. 2024) (Opp. at 7-8) is also unavailing. In *Turner*, the court declined to take judicial notice of the policies the defendant claimed gave notice of the allegedly infringing actions because there was evidence that the policies presented to the court differed from those that the plaintiff saw. 735 F.Supp. at 1181. *Gladstone* did not assess whether any policies gave adequate notice to the plaintiff.

the plaintiff consented to Amazon's terms of service because Amazon had not presented the email containing the notice of those terms that was sent to plaintiffs, or even a description of the email. So there was no basis on which to evaluate whether the email provided adequate notice of the terms. *Id.* at 1100. Here, in contrast, OverDrive has presented the relevant terms, so this Court can make the necessary assessment (just as the other courts cited by OverDrive have done).

Plaintiff also argues that the "generalized notices in Google's and Meta's privacy policies" are insufficient to establish consent because Meta and Google intercepted information "defined as 'sensitive' under California law." (Opp. at 14). This argument is also baseless. First, Plaintiff does not explain what law defines the intercepted information as "sensitive."[4]

Second, even if Plaintiff's browsing of OverDrive's Website involved "sensitive information," the Ninth Circuit rejected Plaintiff's argument in *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018). There, the plaintiffs contended that "although they gave general consent to Facebook's data tracking and collection practices—they did not consent to the collection of health-related data due to its 'qualitatively different' and 'sensitive'

---

[4] If Plaintiff is referring to the California Patron Use Records Act and the Reader Privacy Act, nothing in those laws defines the information collected here as "sensitive"; as discussed below, those laws simply bar certain book services from disclosing certain information to government entities or from being compelled to disclose such information. (*See also* Mot. at 20-21).

Moreover, California's omnibus privacy law, the California Consumer Privacy Act, *does* define "sensitive personal information," and that definition does not include the sort of information allegedly intercepted here. *See* Cal. Civ. Code Sec. 1798.140(ae).

nature." *Id.* at 9. Essentially, the *Smith* plaintiffs made the same argument that Plaintiff raises here, only swapping "health-related data" with "private reading information and library records." The court rejected this argument because (1) "Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical history" and (2) "many other kinds of information are equally sensitive." *Id.* Accordingly, the court "conclude[d] that the practice complained of falls within the scope of Plaintiffs' consent to Facebook's Terms and Policies." *Id.* The same analysis applies here. Meta's and Google's respective terms of use were comprehensive in putting users like Plaintiff on notice that Meta Pixel/Google Analytics used cookies and other methods to track users' activities on third party websites, including sites like OverDrive's. (Mot. at 4-8).[5]

Plaintiff's argument that OverDrive's own policies did not give adequate notice to Plaintiff because they are located at the bottom of every page of the Website (Opp. at 8-12) is also unavailing. What Plaintiff avoids mentioning is that *this is precisely the sort of notice required by the California Consumer Privacy Act*, the state's omnibus privacy law designed to ensure that California residents have notice of what personal information website operators collect from users and what personal information they share with or sell to third parties, and have the ability to delete, correct, and prevent the sharing or selling of their information. Cal. Civ. Code Sec. 1798.100 *et seq*. As part of its notice requirements, the CCPA requires covered businesses with a website to provide notice of their information

[5] Plaintiff's assertion that the Complaint alleges that Defendant sent "Personally Identifiable Information to Google Analytics" (Opp. at 14) is false. Nothing in the Complaint alleges that OverDrive sent Google personally identifiable information. Certainly, the provisions cited by Plaintiff (Compl. ¶¶ 85-90) do not.

practices in an online privacy policy. Cal Civ. Code Sec. 1798.130(a)(5). And regulations promulgated by the CCPA's principal regulator, the California Privacy Protection Agency, specify that notice of the online privacy policy *shall* be provided via a conspicuous link, containing the word "privacy," on the website's homepage. 11 Cal. Code Regs. §7011(d). Plaintiff is thus arguing that a form of notice that is not only compliant with, but *required* by California's privacy regulator, is actually insufficient to provide notice. This radical notion should be rejected.

More broadly, Plaintiff's argument contradicts the whole philosophy of the CCPA. The CCPA implements an "opt-out" regime, which means that businesses can engage in collection and sharing of California residents' personal information as long as they provide notice (in the form required by statute and regulation) and give California residents the ability to opt-out of certain collection and sharing or selling of their information. In other words, consumers are understood to impliedly consent to a business's information collection and sharing practices unless and until they withdraw their consent by "opting out." If Plaintiff's interpretation of CIPA were adopted, it would overturn this regime by requiring that businesses obtain affirmative "opt-in" consent from Californians before collecting information about their use of the businesses' websites. *Cf. Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025), at *3 (Bybee, J., concurring in part and concurring in the judgment) (declining to adopt broad interpretation of CIPA in part because CCPA provides recourse for the alleged conduct). But the California legislature purposely chose *not* to institute an opt-in regime when passing the CCPA. And California voters ratified this choice by amending the CCPA via an initiative known as the California Privacy Rights Act. Plaintiff's argument that she did not consent to OverDrive's policy because she did not affirmatively agree to it, or because notice was

provided only via a link (found on every page of the Website) should therefore be rejected.

### 2. *Plaintiff Has Failed to State a Claim under CIPA § 631(a)*

Plaintiff cannot state a claim under § 631(a)'s second clause because Plaintiff does not plausibly allege that her communications were intercepted "while…in transit or passing over a wire, line, or cable," or while they were "being sent from, or received at any place within this state." (Mot. at 17-19). But even if she did, this would not suffice because § 631 does not prohibit the mere "interception" of communications while in transit. It prohibits "read[ing], or attempt[ing] to read, or … learn[ing] the contents or meaning of" communications while they are in transit or while they are being sent from or received within California. In fact, the Ninth Circuit recently reiterated that the second clause of § 631 is not satisfied with a mere showing that a third party "could read messages" but that a Plaintiff must instead show that the third party "read or attempted to read *her* [] messages" while it is in transit. *Gutierrez*, 2025 WL 1895315, at *1.

Plaintiff's allegations do not give rise to a plausible inference that Meta or Google read, attempted to read, or learned the contents or meaning of Plaintiff's communications "while the same [were] in transit," as required under § 631(a). In fact, she alleges the exact opposite: that ***after*** a user's communications with OverDrive are duplicated, the communications are "***then*** analyzed by the Third Parties before being provided to any entity that was a party to the conversations (like Defendant)." Compl. ¶ 93 (emphasis added). Plaintiff's allegations themselves thus defeat any possible inference that Meta or Google read, attempt to read, or learn the content or meaning of communications obtained from OverDrive's website while they are in transit or while they are being sent or received in California.

This is not just some semantic matter. This Court and other courts have emphasized

that CIPA is based on a recognition that there is something qualitatively different about a third party's listening to or reading a communication while the communication is taking place, and a third party's listening to or reading the same communication after the fact. This is why "if a third party listens in on a conversation between the participants (even if one participant consents to the presence of that third party), then the third party is liable under the second prong" of Section 631, yet "a party to a conversation can record it without the other party's knowledge without incurring [§] 631 liability," even if the party "later played the communication for a third party." *Heerde*, 741 F. Supp. 3d at 860 (*citing Javier*, 649 F. Supp. 3d at 891, 897-898 (N.D. Cal 2023) (cleaned up). As this Court has held, "'a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Id.* (*citing Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985). Plaintiff here has not alleged that Meta or Google read or learned the content or meaning of her communications while they were in transit or while they were being sent or received. She has alleged, at most, that Meta and Google read them or learned their content or meaning *after* they were transmitted, when Meta Google and Meta applied their analytical processes to make the alleged uses of the communications that Plaintiff alleges they could make of them.

### 3. *Plaintiff Has Failed to State a Claim under CIPA § 632*

Plaintiff's claim under § 632 fails because her interactions with OverDrive's Website were not "confidential communications." Section 632(c) defines "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made … in any …circumstance in which the parties to the

communication may reasonably expect that the communication may be overheard or recorded." As discussed above and in the Motion, OverDrive's, Meta's, and Google's policies all made clear that a user's browsing on OverDrive's website was subject to tracking by entities like Meta and Google. Plaintiff therefore could not "reasonably expect" that her communications with OverDrive's website would not be "overheard or recorded" by another party.

Moreover, "'[m]ost of us understand that what we do on the Internet is not completely private.'" *GameStop,* 2025 WL 2250261, at *12 (*quoting In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016)). Accordingly, "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of Section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Brown v. Google LLC,* 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) (citation omitted)(cleaned up); *see also Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (noting "numerous cases finding that Internet-based communications are not confidential within the meaning of Section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications").

Plaintiff's argument that "personal reading information is entitled to heightened privacy protection" (Opp. at 18) is beside the point. Section 632 has a definition of confidential communications that is based on the reasonable expectations of the communicators, not on whether the communications involve information that is deserving of heightened privacy protection. If a person discloses her personal reading choices, or her personal health information for that matter, in a place where she cannot reasonably expect that the information will not be overheard or recorded, that disclosure is not a confidential

communication under Section 632. Plaintiff's citation of the CRPA and CPURA are therefore entirely irrelevant.

Moreover, contrary to Plaintiff's assertion (Opp. at 19), those statutes did not "codif[y] the right to privacy in consumer's personal reading information." Those statutes established narrow limitations on only certain types of disclosures by certain book services of certain types of information. (*See* Mot. at 21). They did not establish some general right to privacy in personal reading information.

## III. CONCLUSION

Based on the foregoing, and for the reasons stated in OverDrive's Motion, this Court should dismiss the Complaint in its entirety.

Dated: August 15, 2025

Respectfully submitted,

*s/ Meegan B. Brooks*

STEPHANIE SHERIDAN (CA 135910)
MEEGAN B. BROOKS (CA 298570)
MICHAEL A. VATIS (admitted pro hac vice)
Benesch, Friedlander, Coplan & Aronoff LLP

Attorneys for Defendant
OverDrive, Inc.

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1**

The undersigned, counsel of record for Defendant, certifies that this brief contains 4,183 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 15, 2025 *_/s/ Meegan B. Brooks_*